UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, on its own behalf and in its capacity as Conservator for Federal National Mortgage Association; FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ANSONIA; RONDA PORRINI, in her official capacity as City Land Use Administrator; DAVID BLACKWELL, SR., in his official capacity as City Anti-Blight Officer; ARTHUR J. DAVIES, in his official capacity as Connecticut State Marshal,<br><br>Defendants. | Civil Action No.  3:20-cv-01320-MPS<br><br><br><br>November 12, 2020 |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs bring this case to stop the City of Ansonia (the "City") from taking actions a federal statute expressly precludes.  This case involves a direct conflict between Connecticut law and federal law.

Acting under state law, the City and the other Defendants purported to impose monetary penalties on the Federal National Mortgage Association ("Fannie Mae") as the owner of certain real property, and purported to attach a lien to that property as an enforcement mechanism to secure payment.  But because Fannie Mae is operating under the conservatorship of the Federal Housing Finance Agency ("FHFA"), a federal statute protects it from liability for penalties and precludes the attachment of involuntary liens to its property.  Under the Supremacy Clause, the state law upon which Defendants rely must yield to those federal statutory commands.  The penalties are void, and the corresponding liens invalid.

This Court should award summary judgment to FHFA and Fannie Mae, and declare the lien, as well as any penalties and fines assessed against Fannie Mae, void as a matter of law.

## BACKGROUND

### I. Fannie Mae's Role in the Mortgage Market

In the 1930s, Congress chartered Fannie Mae to facilitate the nationwide secondary mortgage market, and thereby to enhance the equitable distribution of mortgage credit across the nation. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 556–57 (2017); *City of Spokane v. Fannie Mae*, 775 F.3d 1113, 1114 (9th Cir. 2014). Fannie Mae's federal statutory charter authorizes it to purchase and deal in secured "mortgages," not unsecured loans. 12 U.S.C. §§ 1717(b), 1719; *see also Lightfoot*, 137 S. Ct. at 557 (discussing Fannie Mae's role as a purchaser of mortgages); *Perry Capital LLC v. Mnuchin*, No. 14-5243, 864 F.3d 591, 599–600 (D.C. Cir. 2017) (same). Fannie Mae has purchased millions of mortgages nationwide, including hundreds of thousands of mortgages in Connecticut.

As a result of its mortgage investments, Fannie Mae owns real estate throughout the United States, including Connecticut. Where foreclosure is necessary, Fannie Mae often "takes ownership of the property—a 'real estate owned' (REO) property—to manage and eventually sell it." *Sandidge v. Fed. Nat'l Mortg. Assoc*, No. 3:14-cv-0884, 2017 WL 2362016, at *1 (S.D.N.Y. May 31, 2017); *see also*, *e.g*, Fannie Mae's Servicing Guide ("Guide") at E-4 (discussing Fannie Mae's acquisition of real estate following foreclosure of properties secured by a Fannie Mae mortgage).[1]

---

[1] The Guide is publicly available on Fannie Mae's website in various formats. An interactive version is available at https://servicing-guide.fanniemae.com/. A static PDF of the latest version as of this motion's filing date is available at https://singlefamily.fanniemae.com/media/document/pdf/servicing-guide-september-9-2020. Prior versions are available at

## II.     FHFA and Fannie Mae in Conservatorship

In July 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), which established FHFA as an independent federal agency with regulatory and oversight authority over Fannie Mae, the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Federal Home Loan Banks.  Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 *et seq.*).  In September 2008, FHFA placed Freddie Mac and Fannie Mae (together, "Enterprises") into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs."  12 U.S.C. § 4617(a)(2).  Upon inception of conservatorship, FHFA became Fannie Mae's legal successor, and as such immediately took title to all of Fannie Mae's assets, including Fannie Mae's real property.  12 U.S.C. § 4617(b)(2)(A).  Congress then authorized the Conservator "to undertake extraordinary economic measures" out of a concern that "a default by Fannie and Freddie would imperil the already fragile national economy." *Perry*, 864 F.3d at 599.

In order to protect conservatorship assets, Congress expressly granted FHFA an array of powers, privileges, and exemptions from otherwise applicable laws when acting as Conservator. HERA includes provisions stating that FHFA shall "succeed to all rights, titles, powers, and privileges" of Fannie Mae upon inception of the conservatorship, including succession to property interests.  12 U.S.C. § 4617(b)(2)(A)(i); *Berezovsky v. Moniz*, 869 F.3d 923, 926–27 (9th Cir. 2017).  HERA expressly protects FHFA as Conservator—and therefore the entities operating under its conservatorship—against being "liable for any amounts in the nature of penalties or fines."  *Id.* § 4617(j)(4) ("Penalty Bar").  HERA specifies that no "involuntary lien

---

https://www.allregs.com/tpl/?r=7cd4e9c1-0b0c-472a-ae2f-6e8e90458ad1, and are accessed by clicking "Fannie Mae Single Family," then "Servicing Guide," then "2019 and prior Servicing Guides."  Some sections have been amended during Fannie Mae's ownership of the Loan, but the relevant sections have not materially changed.

-3-

[may] attach to the property of the [FHFA as Conservator]." 12 U.S.C. § 4617(j)(3) ("Involuntary Lien Bar").

### III.     The City of Ansonia's Anti-Blight Program

Connecticut law permits political subdivisions to record a lien on real estate for "any unpaid penalty imposed by a municipality pursuant to the provisions of an ordinance regulating blight."  CONN. GEN. STAT. ("CGS") § 7-148aa.  Under this authority, the City enacted a system of fines which it named "the Anti-Blight Program."[2]  ANSONIA, CONN., CODE ("Ansonia Code") §§ 13-36 – 13-53.1 ("Blight Ordinance").[3]  The Anti-Blight Program provides that "[n]o owner of real property located in the city shall allow, create, maintain, or cause to be created or maintained, any blighted premises." Ansonia Code § 13-47.  The failure of an "owner of real property" to comply with the Blight Ordinance constitutes a violation "punishable by a fine of one hundred dollars ($100.00) for each day a violation exists." *Id.* § 13-50(a)–(b).  This per diem "fine" increases to $250 per day if the property owner fails to pay the fine within thirty days.  *Id.*  And an owner's failure "to pay any fee or fine . . . shall constitute a lien upon the real estate against which the fee was imposed." *Id.* § 13-50(b), (f).

### IV.     Background Related to 66 Benz Street

On April 27, 2007, Kevin D. Parham ("Borrower") recorded a Warranty Deed reflecting that he had taken title in real property located at 66 Benz Street (the "Property") in Ansonia, Connecticut.  Declaration of Erich Ludwig ("Fannie Mae Decl.") (attached at 03-00), ¶ 4, Ex. 03-01 (citing Warranty Deed).  An open-ended mortgage deed listing Borrower; American Brokers

---

[2]     *See* Ansonia Code art. III (Titled "Anti-Blight Program"); §13-53.1 ("All funds collected by the city as *fines* through the *anti-blight program* shall be deposited into an account . . . to be used for associated costs in enforcing and administering this *anti-blight program*, including but not limited to other anti-blight initiatives and remediation.") (emphasis added).

[3]     Available at https://library.municode.com/ct/ansonia/codes/code_of_ordinances.

Conduit as the lender ("Lender"); and Mortgage Electronic Registration Systems, Inc. ("MERS"), as beneficiary solely as nominee for Lender and Lender's successors and assigns; was executed on April 25, 2007, and recorded on April 27, 2007 ("Deed of Trust"). Fannie Mae Decl., ¶ 5, Ex. 03-02 (citing Open Ended Mortgage Deed). The Deed of Trust granted Lender a security interest in the Property to secure repayment of a loan in the original amount of $208,000 to the Borrower. *Id.* On October 17, 2011, MERS recorded an assignment of the Deed of Trust to Wells Fargo Bank, N.A. ("Wells Fargo") Fannie Mae Decl., ¶ 6, Ex. 03-03 (citing Corporate Assignment of Mortgage). On June 3, 2019, Wells Fargo recorded a Certificate of Foreclosure stating that, as a result of Borrower's continued delinquency on the loan after "the time limit for redemption in said Judgment of Foreclosure has passed," on May 7, 2019, "title to [the Property] became absolute in" Wells Fargo. Fannie Mae Decl., ¶ 7, Ex. 03-04 (citing Certificate of Foreclosure).

On May 31, 2019, Fannie Mae took title to the Property when Wells Fargo executed a Quit Claim Deed that transferred all "right and title" in the Property to Fannie Mae; that deed was recorded in the City's public records on June 10, 2019. Fannie Mae Decl., ¶ 8, Ex. 03-05 (citing Quit Claim Deed). Under HERA, FHFA succeeded to that ownership interest immediately upon the deed's execution, thereby triggering the protections of the Penalty Bar and the Involuntary Lien Bar as of May 31, 2019. Before that date, the City had imposed $2,400 in blight fines related to allegedly unremediated blight conditions on the Property for the period May 8, 2019 to May 31, 2019, but had not recorded any corresponding lien.

After Fannie Mae took title to the Property, the City purported to impose per diem blight fines upon Fannie Mae, and to attach a lien to the Property to secure payment for all blight fines imposed in relation to the Property, under the Blight Ordinance. Specifically, on June 5, 2019,

the City—acting through defendant David Blackwell Sr., the City's Blight Enforcement Officer—executed on the Property a Blight Lien and Certification of Continuing Lien which the City finally recorded in its public records on June 6, 2019. Fannie Mae Decl., ¶ 9, Ex. 03-06 (citing Blight Lien). More than a year later, on July 2, 2020, defendant Arthur J. Davies, a Connecticut State Marshal, issued an Alias Warrant for Anti-Blight Fines against Fannie Mae related to allegedly unremediated blight conditions on the Property that accrued under the Anti-Blight Program. Fannie Mae Decl., ¶ 10, Ex. 03-07 (citing Alias Warrant). The Alias Warrant tallied the Blight Lien fines as follows:

- 05/08/2019 to 05/31/2019:    $2,400
- 06/07/2019 to 06/30/2019:    $6,000
- 07/01/2019 to 12/31/2019:    $46,000
- 01/01/2020 to 04/13/2020:    $26,000

*Id.* The itemized dollar figures add up to $80,400, which with a 15% Marshal Fee of $12,060, would total $92,460. Nevertheless, the Alias Warrant claimed $81,600 in "accrued fines," along with a 15% Marshal Fee of $12,240, and stated a "Total Fine Due" of $93,840.[4] The Alias Warrant also revealed that the City did not spend any money to remediate the alleged blight on the Property. *Id.* ("REMEDIATION _____ $ 000").

## LEGAL STANDARD

A motion for summary judgment may be filed "at any time" up to 30 days following the close of discovery, and may be granted where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a), (b); *see*

---

[4] As the listed figures do not sum to the listed total, the Alias Warrant apparently incorporates a computational error or some other omission. As discussed below, however, the discrepancy is not material to the relief Plaintiffs seek.

also *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of unspecified disputed material facts, present mere speculation, or offer conjecture.  *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990).

## ARGUMENT

HERA's Penalty Bar insulates Fannie Mae from liability for all amounts in the nature of fines or penalties while Fannie Mae is in FHFA conservatorship, as it has been since 2008.  The City purported to assess against Fannie Mae and in relation to the Property amounts the Blight Ordinance expressly denominates fines and penalties.  Under HERA, therefore, they are void.

Likewise, HERA's Involuntary Lien Bar expressly precludes liens from attaching to Fannie Mae's property while Fannie Mae is under FHFA's conservatorship.  The City purported to attach the blight lien at issue in this case—including the portion corresponding to penalties assessed while Wells Fargo held record title—to the Property *after* Fannie Mae took title.  Accordingly, under HERA, the entire lien is void.

**I.     HERA Immunizes FHFA and Fannie Mae from Liability for Any Penalties or Fines the City Could Impose under the Blight Ordinance**

HERA's Penalty Bar prohibits the imposition of any penalty or fine on Fannie Mae while it is in FHFA's conservatorship.  12 U.S.C. § 4617(j)(4).  Fannie Mae has been in FHFA's conservatorship since 2008, and therefore at all times relevant to this case.  Accordingly, this Court should declare void all penalties or fines the City has purported to impose on Fannie Mae in relation to the Property.

For purposes of this motion, Plaintiffs adopt the itemized figures in the Alias Warrant as the City's accounting of Blight Lien fines, but note that the Alias Warrant contains omissions or errors in calculation.  The itemized figures ($2,400 + $6,000 + $46,000 + $26,000) total $80,400 (not $81,600, as the Alias Warrant incorrectly states); with a 15% Marshal Fee of $12,060 (not $12,240), the total would be $92,460 (not $93,840).

To be clear, Plaintiffs do not by this motion request that the Court void the $2,400 in fines imposed from May 8 to May 31, 2019, when Wells Fargo held record title, but do not waive the issue.[5]  The City purported to assess all other amounts as fines or penalties against Fannie Mae, and they are therefore void.

### A. The Conservatorship is Immune from Penalties and Fines

Fannie Mae has been under FHFA's conservatorship since 2008.  Fannie Mae Decl., ¶ 3.  HERA provides that the Conservator "shall not be liable for any amounts in the nature of penalties or fines."  12 U.S.C. § 4617(j)(4).  "[W]hile under conservatorship with the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the same extent that the FHFA is."  *Nevada ex rel. Hager v. Countrywide Home Loans Servicing*, LP, 812 F. Supp. 2d 1211, 1218 (D. Nev. 2011); *FHFA v. City of Chicago*, 962 F. Supp. 2d 1044, 1064 (N.D. Ill. 2013) (argument is "meritless"); *Nat'l Fair Hous. Alliance v. Fed. Nat'l Mortg. Assoc.*, No. C 16-06969 JSW, 2019 WL 3779531, at *6 (N.D. Cal. Aug. 12, 2019).  This plain and unambiguous statutory language makes it clear that Defendants may not assess any penalty or fine on Fannie Mae while it remains in FHFA's conservatorship.  Yet, despite this plain bar against the assessment of penalties and fines on the Conservator or the Enterprises, Defendants

---

[5]   *See infra* pp. 10–11.

assessed an impermissible fine of more than $90,000 on Fannie Mae.[6]  Fannie Mae Decl., ¶ 10, Ex. 03-07 (citing Alias Warrant).

Decisions applying the analogous statutory protection applicable to the FDIC confirm the point.  For instance, the Second Circuit has recognized that 12 U.S.C. § 1825(b)(3) prohibits the FDIC's liability for penalties or fines "without qualification."  *Nat'l Loan Inv'rs L.P. v. Town of Orange*, 204 F.3d 407, 410 (2d. Cir. 2000).  Similarly, the Ninth Circuit has held that "[t]here is no question that [12 U.S.C. § 1825(b)(3)] exempts the FDIC from penalties after it becomes the receiver."  *In re Cnty of Orange*, 262 F.3d at 1022 (9th Cir. 2001).  District courts within the Second Circuit have also concurred.  *S/N1 Reo Ltd. Liability Co. v. City of New London ex rel. Ballestrini*, 127 F. Supp. 2d 287, 292 (D. Conn. 2000) (explaining that penalties are "barred from collection by 12 U.S.C. § 1825(b)(3)"); *Cassese v. Washington Mut., Inc.*, 711 F. Supp. 2d 261, 273 (E.D.N.Y. 2010) (finding "no indication that the FDIC is liable as receiver for penalties . . . that are assessed *after* the receivership commences." (emphasis in original).

Accordingly, the Penalty Bar prohibits the imposition or assessment of any penalty or fine on Fannie Mae or FHFA with respect to the Property.

### B. The Penalty Bar Precludes the Anti-Blight Penalties the City Purported to Impose upon Fannie Mae

There is no dispute that the Blight Ordinance imposes a penalty and fine on owners of purportedly blighted property.  On May 31, 2019, Fannie Mae became the owner of the Property when Wells Fargo executed a Quit Claim Deed which transferred all "right and title" in the Property to Fannie Mae.  Fannie Mae Decl., ¶ 8, Ex. 03-05 (citing Quit Claim Deed).  As FHFA

---

[6]  As noted above, the figure in the Alias Warrant appears to have been calculated incorrectly.  By this motion, Plaintiffs seek relief from all blight fines assessed against Fannie Mae in relation to the Property, including all amount referenced in the Alias Warrant other than the $2,400 assessed during the period May 8 to May 31, 2019 (which Plaintiffs do not waive).

instantly succeeded to Fannie Mae's ownership interest, the protections of the Penalty Bar and the Involuntary Lien Bar were in effect as of May 31, 2019.

"Whether a charge constitutes a penalty for purposes of [a federal statute] is a federal question informed by state law." *Nat'l Loan Inv'rs L.P.*, 204 F.3d at 412. "The purpose of a penalty . . . is to serve as an incentive to prompt payment." *Id.* Here, the Blight Ordinance's plain language unambiguously creates a penalty or fine for failure to remediate blight.

First, the Connecticut statute authorizing the Blight Ordinance permits the assessment of a "penalty" — "[a]ny unpaid *penalty* imposed by a municipality pursuant to the provisions of an ordinance regulating blight . . . shall constitute a lien upon the real restate against which the *penalty* was imposed." CGS § 7-148aa (emphasis added). The Supreme Court of Connecticut has described this statutory provision as one requiring "full" payment of "[a]ny assessment of *fines*." *Mangiafico v. Town of Farmington*, 331 Conn. 404, 411 (Conn. 2019) (emphasis added).

Second, the Blight Ordinance's relevant code provision is titled "Violations and Penalties" and expressly provides that "[v]iolations" of the ordinance "shall be punishable by a fine . . . for each day a violation exists." Ansonia Code §13-50(b). If a property owner fails to fix the violation or pay the fine within thirty days, "[t]he fine will increase" to $250 per day. *Id.* Any statutory mechanism that increases the penalty for failure to timely remediate a blight violation confirms that the Blight Ordinance imposes a hallmark characteristic of a fine, which is "to serve as an incentive to prompt payment." *Nat'l Loan Inv'rs L.P.*, 204 F.3d at 412; *SRS Holdings, LLC v. City of Norwich*, No. KNLCV165015165S, 2017 WL 5923856, at *6 n.4 (Conn. Super. Ct. Oct. 31, 2017) (explaining that cities "may use the so-called blight ordinance to encourage compliance with a scheme of laws to promote public safety and welfare").

Finally, the very language of the Alias Warrant issued to Fannie Mae demands payment

of a "fine."  The "subject" of the Alias Warrant is for "Anti-Blight Fines" and the warrant demands payment of "Total Fines Due."  Fannie Mae Decl., ¶ 10, Ex. 03-07 (citing Alias Warrant).  Moreover, as the Alias Warrant tabulation outright concedes that the City has incurred "$000"—zero dollars—in out of pocket "REMEDIATION" expenses, there is no possibility that the amounts sought could be deemed compensatory, rather than penal.  *Id.*  Indeed, the language leaves no doubt that Defendants seek to impose a punitive fine on Fannie Mae for its failure to remediate purported blight on the Property and to promptly pay the charge.

Without waiving the issue, Plaintiffs do not by this motion seek relief concerning the $2,400 in penalties assessed during the period from May 8 to May 31, 2019, when Wells Fargo held title.  Wells Fargo, a loan servicer, acted at all relevant times and for all relevant purposes in its capacity as Fannie Mae's contractually authorized representative.  Accordingly, Wells Fargo held title on Fannie Mae's behalf, not on Wells Fargo's own account, and Plaintiffs may seek relief for the $2,400 in blight penalties assessed against Wells Fargo separately.  The calculation issue noted above, *see supra* p. 7, is immaterial to the relief sought, as the amount of penalties and fines imposed before Fannie Mae took title is not in dispute.  Thus, the balance beyond $2,400—whatever it may be when properly computed—is void under HERA's Penalty Bar.

## II.     The Involuntary Lien Bar Voids Ansonia's Blight Lien

Defendants' attempt to apply state-law to attach an involuntary lien to Property owned by Fannie Mae also conflicts directly with a federal statute.  Specifically, federal law states that "[n]o property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, *nor shall any involuntary lien attach to the property of the Agency*."  12 U.S.C. § 4617(j)(3) (emphasis added).  For this provision to apply, this Court must decide three issues.  *First*, the Court must decide whether the Involuntary Lien Bar prohibits the City from attaching an involuntary lien to conservatorship property.  It does.

-11-

*Second*, the Court must decide whether Fannie Mae was the owner of the Property when the City recorded the Blight Lien. It was. *Third*, the Court needs to decide whether FHFA succeeded to Fannie Mae's interest in the Property. It did.

As a result, any Blight Lien recorded after Fannie Mae took title on June 1, 2019—including the lien (or portion of a lien) corresponding to $2,400 in blight fines during the period from May 8 to May 31, 2019—is void.[7]

### A. The Involuntary Lien Provision Preempts the Blight Ordinance

Unlike a voluntary lien (such as a mortgage), an involuntary lien arises by automatic operation of statute or common law, without need for "voluntary" action, consent, or contract by the property owner. The Blight Lien purports to arise, not by voluntary action, consent or contract, but instead by automatic operation of Ansonia Code §13-50, which states that failure "to pay any fee or fine" related to a Blight Ordinance violation "*shall constitute a lien* upon the real estate against which the fee was imposed." Ansonia Code §13-50 (emphasis added). Thus, Ansonia Code §13-50 plainly illustrates that the Blight Lien is an archetypal involuntary lien.

Congress enacted HERA with an unambiguous statement: "nor shall any involuntary lien attach to the property of the Agency." 12 U.S.C. § 4617(j)(3). Under the Supremacy Clause, this plain and unequivocal language prevents the City from recording or attaching the Blight Lien to the Property. U.S. Const. art. 6, cl.2; *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (explaining that conflict preemption exists where "local law conflicts with federal law such that it is impossible for a party to comply with both or

---

[7] In Section I, Plaintiffs clarify that they do not by this motion seek relief concerning the $2,400 in blight penalties assessed when Wells Fargo appeared as record title holder. However, even if the Penalty Bar did not bar the underlying penalty because it was imposed before Fannie Mae took title, the Involuntary Lien Bar nevertheless invalidates the $2,400 lien, because the City first sought to record it *after* Fannie Mae took title.

the local law is an obstacle to the achievement of federal objectives").

The conflict between federal law and the Blight Ordinance is plain. Under the Blight Ordinance, a failure to pay a fine related to blight on real property "shall constitute a lien upon the real estate" and "[e]ach such lien may be continued [and] recorded." Ansonia Code § 13-50(f). However, where an Enterprise under FHFA's conservatorship owns real property, federal law prevents "any involuntary lien"—such as the Blight Lien—from "attach[ing] to the property of the Agency." 12 U.S.C. § 4617(j)(3). Here, it is impossible for Defendants to enforce the Blight Ordinance—by attaching the Blight Lien to the Property after Fannie Mae took title—and simultaneously comply with federal law, which prevents the recording of this type of involuntary lien on conservatorship property. Accordingly, HERA prevents Defendants from attaching any lien under the Blight Ordinance on property of an Enterprise in conservatorship.[8]

Indeed, courts applying the analogous statute governing the Federal Deposit Insurance Corporation ("FDIC") receiverships, 12 U.S.C. § 1825(b)(2), have held that the provision paralleling HERA's Involuntary Lien Bar supersedes otherwise applicable state and local law. *See F.D.I.C. v. Lowery*, 12 F.3d 995, 997 (10th Cir. 1993) ("Section 1825(b)(2) explicitly states no involuntary lien may attach to the property of the FDIC."); *Irving Indep. School Dist. v. Packard*, 970 F.2d 58, 61 (5th Cir. 1992) ("The result of § 1825(b)(2) is that liens may not attach to that property while the FDIC owns it."); *Beal Bank, SSB v. Nassau Cty.*, 973 F. Supp. 130, 133 (E.D.N.Y. 1997) ("According to the unambiguous language of [12 U.S.C. § 1825(b)(2)], no involuntary liens may attach while the FDIC is the owner of the property at issue."). This FDIC provision, which is materially identical to the Involuntary Lien Bar, "denies authorities" such as

---

[8] In Connecticut, "attachment of real estate" is synonymous with recording a real property encumbrance such as a lien. *See* CGS § 52-285; *Farmers and Mechanics Sav. Bank v. Garofalo*, 219 Conn. 810, 813 (Conn. 1991).

Defendants "the ability to lien a [conservatorship] property as a vehicle for collection" of a debt. *Lowery*, 12 F.3d at 997.

### B.  Fannie Mae Owned 66 Benz Street When Defendants Attached the Lien

It is undisputed that Fannie Mae was the owner of the Property when Defendants recorded the Blight Lien.  Specifically, Fannie Mae became the owner of the Property on May 31, 2019 when Wells Fargo transferred the Property's title interest to Fannie Mae by executing and delivering a Quit Claim Deed.  Fannie Mae Decl., ¶ 8, Ex. 03-05 (citing Quit Claim Deed). Under HERA, FHFA immediately succeeded to that ownership interest, thereby triggering the protections of the Penalty Bar and the Involuntary Lien Bar.  Although the City had imposed blight fines against the Property relating to the period from May 8 to May 31, 2019, the City did not record any corresponding lien until *after* May 31, 2019, when the protections of the Involuntary Lien Bar were already in effect.  Thus, when Defendants recorded the Blight Lien on June 6, 2019, federal law prevented the Blight Lien from attaching.  *See* Fannie Mae Decl., ¶ 9, Ex. 03-06 (citing Blight Lien).  As a result, this Court should void the Blight Lien recorded against the Property, as it was attached to the Property after May 31, 2019, the date Fannie Mae took title.

Connecticut law recognizes "title" as a property interest.  *See generally*, *Brill v. Ulrey*, 159 Conn. 371, 373 (Conn. 1970) (describing a quiet title claim as one "brought by a person claiming title" meaning the person has "an actual interest in the property").  And Connecticut courts routinely describe the person having title as the "owner" of the real property.  *See Mills v. Shepard*, 30 Conn. 98, 101 (Conn. 1861) (explaining that a mortgagee becomes the "owner" of property following foreclosure); *Allen v. Johnson*, 831 A.2d 282, 286 (Conn. App. 2003) (explaining that "acknowledgement of the owner's title" terminates the statutory period for adverse possession); *see also*, *Title*, Black's Law Dictionary (11th ed. 2019) ("The union of all

-14-

elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property."). Indeed, under the Blight Ordinance, the City of Ansonia recognized Fannie Mae as the owner of the Property because that code defines an "owner" as "any person, institution, foundation, corporation, partnership, entity or authority *which holds title to* . . . real property within the City of Ansonia." Ansonia Code § 13-48 (emphasis added). Moreover, a quit claim deed is a statutory "conveyance to the releasee of all the releasor's right, title, and interest in and to the property," CGS § 47-36f, and a "conveyance" under Connecticut law has the effect of giving "all the possession, right, title, [and] interest . . . absolutely in and to the land conveyed," CGS § 47-36b. Accordingly, Fannie Mae became the owner of the Property on May 31, 2019 when Wells Fargo executed and delivered the Quit Claim Deed that conveyed "all such right and title" in the Property to Fannie Mae. Fannie Mae Decl., ¶ 8, Ex. 03-05 (citing Quit Claim Deed).

It is irrelevant that Fannie Mae did not record its ownership interest in the Property until June 10, 2019. Recording is not necessary for the creation of a property interest. Rather, Connecticut and common law recognize that legal title vested in Fannie Mae upon delivery and acceptance of the Quit Claim Deed. *Chattaway v. New London*, 133 Conn. 377, 388 (Conn. 1947) ("A deed, in order to pass title to land, must not only be delivered by the grantor but also accepted by the grantee."). Indeed, one Connecticut court has recently rejected the argument that a party "is not the owner of the property because the deed ha[d] not been filed in the Hartford land records." *Homeowners Finance Co. v. Stuart*, No. HFH-CV-186010887, 2019 WL 2573805, at *3 (Conn. Super. Ct. Apr. 2, 2019). Rather, the court recognized that the party had "proved that is the owner of the property because legal title had vested in it upon its acceptance of the quitclaim deed." *Id.* The same is true here. On May 31, 2019, Wells Fargo executed and

delivered the Quit Claim Deed to the Property which Fannie Mae accepted. Fannie Mae Decl., ¶ 8, Ex. 03-05 (citing Quit Claim Deed). Thus, ownership of the Property vested in Fannie Mae on May 31, 2019.

### C. The Involuntary Lien Provision Applies Because FHFA Succeeded to Fannie Mae's Property Interest

Initially, Fannie Mae's interest in the Property is "property of the Agency" as contemplated by HERA. The protections of Section 4617(j)(3) apply in "any case in which [FHFA] is acting as a conservator or a receiver." 12 U.S.C. § 4617(j)(1). In its capacity as Conservator, FHFA has succeeded by law to all of Fannie Mae's "rights, titles, powers, and privileges [and its] assets." *Id.* § 4617(b)(2)(A)(i); *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1144 (9th Cir. 2018) (HERA mandates that FHFA shall 'succeed to' Enterprise assets).

The property protection accorded by Section 4617(j)(3) would be meaningless if it did not extend to the entities in conservatorship. Indeed, such an interpretation would defeat the very purpose of the conservatorship. Accordingly, courts have uniformly rejected any argument that the immunities provided by Section 4617(j) do not apply to entities under FHFA conservatorship. *See Berezovsky*, 869 F.3d at 926–27; *Perry*, 864 F.3d at 624–25 ("[T]he Succession Clause transferred all of the stockholders' rights to the FHFA in conservatorship.").

The courts have also rejected similar arguments in the context of FDIC receiverships. *See In re Cnty. of Orange*, 262 F.3d 1014, 1020 (9th Cir. 2001) ("We also note that subsection (b)(2) provides 'nor shall any involuntary lien attach to the property of the Corporation.' That language's plain meaning is that once the property belongs to the FDIC, that is, when the FDIC acts as receiver, no liens shall attach") (emphasis omitted) (quoting 12 U.S.C. § 1825(b)(2)); *Pac. Nw. Capital, Inc. v. First Union Nat'l Bank*, No. CIV. 00-2334 (AET), 2000 WL 33380141,

at *4 (D.N.J. Nov. 1, 2000) ("Because no municipality may impose an involuntary lien on property of the FDIC without its consent, the New Jersey statute does not apply to the property at issue. . . . No party in this action has asserted that the FDIC consented to the imposition of liens against the subject property."). Similarly, in the case of *County of Fairfax v. FDIC*, Civ. A. No. 92-0858, 1993 WL 62247, at *4 (D.D.C. Feb. 26, 1993), the court rejected the contention that 12 U.S.C. § 1825(b)(3), a statutory penalty bar applicable to the FDIC as receiver, only "exempts the FDIC itself from penalty assessment but not the [financial institution] for which the FDIC assumes receivership."

Put simply, any property of Fannie Mae effectively became property of FHFA once FHFA assumed the role of conservator. *Skylights v. Byron*, 112 F. Supp. 3d 1145, 1148 (D. Nev. 2015). Fannie Mae has a property interest via the Quit Claim Deed. Fannie Mae Decl., ¶ 8, Ex. 03-05 (citing Quit Claim Deed). That property interest effectively became the property of FHFA once it assumed the role as conservator. Thus, under the clear language of HERA, the protections of section 4617(j) apply to Fannie Mae's interest in the 66 Benz Street property.

## III. The Court Should Enter Summary Judgment against Defaulted Defendant Arthur J. Davis on the Merits

Contemporaneously with this Motion for Summary Judgment, Plaintiffs are filing a Motion for Default as to State Marshal Arthur J. Davies for failing to appear and defend this action pursuant to Fed. R. Civ. P. 55(a). Although Plaintiffs may file a Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b) if the Motion for Default is granted,[9] they respectfully submit that summary judgment may also enter against Arthur J. Davies on the

---

[9] *New York v. Green*, 420 F.3d 99, 105 (2d Cir. 2005) ("By its terms, Rule 55(b)(2) requires advance written notice only if the party against whom a default judgment is sought has 'appeared in the action.'")

-17-

merits, for the reasons set forth herein.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court grant their Motion for Summary Judgment and enter a final judgment declaring that:

- 12 U.S.C. § 4617(j)(4) preempts Ansonia Code §§ 13-36 – 13-45 to the extent that the municipal ordinance permits the assessment and collection of penalties and fines on the Conservatorship;

- All penalties and fines assessed against Fannie Mae in connection with the Property at any time from May 31, 2019 to today, including all such amounts enumerated in the Alias Warrant, regardless of whether tallied correctly in that document, are void;

- 12 U.S.C. § 4617(j)(3) preempts Ansonia Code §§ 13-36 – 13-53.1 to the extent that municipal ordinance permits the attachment of an involuntary lien on Conservatorship property; and

- The Blight Lien recorded against the Property is void.

**RESPECTFULLY SUBMITTED,**

**PLAINTIFFS,**

**FEDERAL HOUSING FINANCE AGENCY, on its own behalf and in its capacity as Conservator for Federal National Mortgage Association**

By: */s/ James A. Budinetz*
 James A. Budinetz (ct16068)
 McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
 One State Street, 14th Floor
 Hartford, CT 06103-3102
 T: (860) 522-5175
 F: (860) 522-2796
 Email:  jbudinetz@mdmc-law.com
                    and
 Howard N. Cayne, Esq. (*pro hac vice* admission to be sought)
 Asim Varma, Esq. (*pro hac vice* admission to be sought)

-19-

   Michael A.F. Johnson, Esq. (*pro hac vice* admission to be sought)
   ARNOLD & PORTER KAYE SCHOLER LLP
   601 Massachusetts Avenue
   Washington, D.C. 20001
   T: (202) 942-5000
   F: (202) 942-5999
   Email: howard.cayne@arnoldporter.com
      asim.varma@arnoldporter.com
      michael.johnson@arnoldporter.com

**and**

By: */s/ Andrew L. Baldwin*
   Andrew L. Baldwin (ct29171)
   GOLDBERG SEGALLA, LLP
   100 Pearl Street, Suite 1100
   Hartford, CT 06103-4506
   T: (860) 760-3328
   F: (860) 760-3313
   Email: abaldwin@goldbergsegalla.com

**CERTIFICATION**

I hereby certify that on November 12, 2020, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail (or personal service) to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                              */s/     James A. Budinetz*
                                                  James A. Budinetz