UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, on its own behalf and in its capacity as Conservator for Federal National Mortgage Association; FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ANSONIA; RONDA PORRINI, in her official capacity as City Land Use Administrator; DAVID BLACKWELL, SR., in his official capacity as City Anti-Blight Officer; ARTHUR J. DAVIES, in his official capacity as Connecticut State Marshal,<br><br>Defendants. | Civil Action No.  3:20-cv-01320-MPS<br><br><br><br>January 15, 2021 |

### MEMORADUM OF LAW IN SUPPORT
### OF DEFENDANTS' OBJECTION TO SUMMARY JUDGMENT

#### INTRODUCTION

The Plaintiffs in this matter are seeking to improperly utilize a federal statute to thwart the efforts of the Defendants – a Connecticut municipality, its staff and agents – from holding the Federal Housing Finance Agency ("FHFA") and Federal National Mortgage Association ("Fannie Mae") accountable for their failure to comply with a municipal ordinance intended mitigate the deleterious impact of residential blight on the health, safety and property values of residents of the City of Ansonia.

More specifically, the Plaintiffs seek to invalidate a blight lien recorded by the Defendant City of Ansonia against property owned by Plaintiff Fannie Mae at 66 Benz Street, Ansonia, Connecticut, on the assumption that the federal Housing and Economic Recovery Act of 2008 ("HERA"), codified as 12 U.S.C. § 4511, shields the Federal Housing Finance Agency and its

1

regulated entities (including Fannie Mae) from the enforcement of the City of Ansonia's land use regulations.

However, the Plaintiffs' reliance on 12 U.S.C. § 4511 is misplaced, as HERA does not expressly or impliedly preempt FHFA and its regulated entities from local blight fees or liens. Moreover, such a conclusion would violate the plain language and legislative intent of the federal statute, and illogically work to the detriment of public policy designed to protect the interests of local government and its residents.

The Defendants therefore pray that this Court reject Plaintiffs' interpretation of 12 U.S.C. § 4511 and deny Plaintiffs' Motion for Summary Judgment on that basis.

## STANDARD OF REVIEW

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Questions of preemption are purely legal and may be resolved on summary judgment. *See Bank of Am. v. City & Cty. of San Francisco*, 309 F.3d 551, 566 (9th Cir. 2002). ***A party who asserts preemption bears the heavy burden to show that was the "clear and manifest purpose of Congress****.*" (Emphasis added). *See Wyeth v. Levine*, 555 U.S. 555, 565–569, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009).

## ARGUMENT

The Plaintiffs' contend that HERA's so-called "Involuntary Lien Bar" (12 U.S.C. § 4511(j)(3)) and "Penalty Bar" (12 U.S.C. § 4511(j)(4)) prohibit the assessment of blight fines and recording of blight liens against the property at 66 Benz Street. The Plaintiffs' argue that the property is owned by Fannie Mae (Plaintiffs' Decl., ¶ 8, Ex. 03-05, citing Quit Claim Deed), and that Fannie Mae is, under the conservatorship of FHFA, entitled to FHFA's HERA-established protections.

Yet nowhere in HERA is it actually established that the "Involuntary Lien Bar" or "Penalty Bar" is intended to shield FHFA or its regulated entitles from *municipal* blight fees or liens or to preempt local land use laws. In fact, the statute's "preemption clause" omits mention of municipal or local governments entirely.

Moreover, the Plaintiffs' interpretation would a result would be illogical and contrary to Congress' rationale for enacting HERA. "Notably, HERA's legislative history does not reflect the need to protect [Fannie Mae's] pre-foreclosure assets, displace state foreclosure law, or sanctify pre-foreclosure lender possession. Rather, Congress articulated the converse: the desire to help homeowners on the brink of foreclosure retain their homes to stabilize the housing market by providing a watchdog over the Enterprises [such as Fannie Mae] in conservatorship." (Brackets added). *Jordan v. Nationstar Mortg.*, LLC, 240 F. Supp. 3d 1114, 1119 (E.D. Wash. 2017).

The protection of local residents through the enforcement of municipal blight laws in not contrary to the legislative purpose of HERA. To the contrary, allowing FHFA and Fannie May to violate blight laws without consequence is detrimental to the health, safety and interests of the very homeowners that HERA was designed to help.

**FEDERAL PREEMPTION**

Congress's ability to preempt state law emanates from the Supremacy Clause of the United States Constitution. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 78, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990); U.S. Const. Art. VI, cl. 2. Federal preemption occurs when either "(1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Tocher v. City of Santa Ana,* 219 F.3d 1040, 1045–46 (9th Cir. 2000) (citation omitted), *abrogated on other grounds by City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 431–34, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002).

Two principles guide a court's analysis. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). First, courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (internal quotation marks and citation omitted). Importantly, "[w]here ... the field which Congress is said to have pre-empted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be clear and manifest." *English*, 496 U.S. at 79, 110 S.Ct. 2270 (internal quotation marks and citations omitted).

Second, federal law will supersede state law only if Congress intended such an outcome. *Medtronic, Inc.*, 518 U.S. at 485–86, 116 S.Ct. 2240 (congressional purpose is "the ultimate touchstone") (citations omitted). Courts must determine Congress's intent "from the language of the pre-emption statute and the 'statutory framework' surrounding it." *Id.* at 486, 116 S.Ct. 2240 (citation omitted). Yet, the "structure and purpose of the statute as a whole, ... as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law" must also be considered. *Id.* (internal quotation marks and citations omitted). Courts are cautioned to "not be guided by a single sentence or member of a sentence, but [to] look to the provisions of the whole law, and to its object and policy." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (internal quotation marks and citations omitted).

I. **HERA DOES NOT EXPRESSLY PREEMPT MUNICIPAL BLIGHT FEES OR LIENS.**

Congress is permitted to expressly displace state law under the Supremacy Clause of the Constitution. *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). Express preemption "arises when the text of a federal statute explicitly manifests Congress's intent to displace state law." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013) (quoting *United States v. Alabama,* 691 F.3d 1269, 1281 (11th Cir. 2012)). Preemption is not to be applies liberally or capriciously: "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *See Medtronic, Inc.*, 518 U.S. at 485, 116 S.Ct. 2240.

Here, a plain reading of HERA reveals that it was not intended to apply to a municipality or local government's ability to assess blight fees or liens. Indeed, the statute never explicitly

5

states that FHFA cannot be subject to the direction and supervision of a municipal agency, and subject to municipal land use regulations.

To the contrary, HERA's preemption clause establishes that "[w]hen acting as conservator or receiver, the Agency shall not be subject to the direction or supervision of any other agency of the United States *or any State* in the exercise of the rights, powers, and privileges of the Agency." (Emphasis added). 12 U.S.C. §4617(a)(7).

Notably, even caselaw cited by the Plaintiffs for the proposition that "HERA provides a Conservator shall not be liable for any amounts in the nature of penalties or fines" refused to find that HERA *expressly* applies to municipalities. *See:* Plaintiffs' Memorandum at Page 8; *Fed. Hous. Fin. Agency*, 962 F.Supp.2d 1044 at 1056-57 (N.D. Ill. 2013) (holding that HERA's "preemption clause" did not *expressly* preempt municipal ordinance imposing penalties on vacant properties).

In 12 U.S.C. § 4568(a)(1), Congress provided that "States (as such term is defined in section 4502 of this title)" means "any of the 50 States of the United States," 12 U.S.C. § 4568(c)(4)(C), which are separate from the "instrumentalities of the State," 12 U.S.C. § 4568(c)(2), such as the City of Ansonia. Thus, HERA reflects that Congress understood the difference between the various levels of government and did not include localities in its definition of "State."

The text of HERA also demonstrates that Congress understood that if it wished to provide an exemption from the application of local (as opposed to State) law, it had to do so explicitly - and it did just that when it wanted to. *See*, *e.g.*, 12 U.S.C. § 4617(j)(2) (exempting the Agency from state and local government taxation); 12 U.S.C. § 4617(i)(5) (exempting limited-life

enterprises from state and local government taxation); 12 U.S.C. § 4642(b) (exempting persons making fraud reports from claims under state and local government law).

"Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 433-34 (2002).

Crucially, neither HERA's so-called "Involuntary Lien Bar" nor "Penalty Bar" contain any mention of municipalities or local government:

> **(3) Property protection**
> No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency.
>
> 12 U.S.C. § 4511(j)(3)
>
> **(4) Penalties and fines**
> The Agency shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.
>
> 12 U.S.C. § 4511(j)(4)

"[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors preemption.' " *Altria Group, Inc. v. Good,* 555 U.S. 70, 77, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008) (quoting *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005)).

II.   **PREEMPTION OF ANSONIA'S BLIGHT LAWS CANNOT BE INFERRED.**

Preemption may be inferred "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it[.]" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)

(internal quotation marks and citation omitted). "Preemption should not be inferred ... simply because the agency's regulations are comprehensive." *R.J. Reynolds Tobacco Co. v. Durham Cty.*, N.C., 479 U.S. 130, 149, 107 S.Ct. 499, 93 L.Ed.2d 449 (1986) (citation omitted).

Here, there is no evidence that Congress intended to preempt municipalities such as the City of Ansonia from enforcing land-use regulations such as its anti-blight ordinance. In fact, the language of the "Involuntary Lien Bar" nor "Penalty Bar" can be read as pertaining solely to the corresponding "Taxation Bar" in the preceding Section.

By comparison, the "Taxation Bar" provision immediately preceding 12 U.S.C. § 4511(j)(3) and 12 U.S.C. § 4511(j)(4) ***does*** explicitly reference its applicability to local authorities, providing more insight into what Congress intended:

> **(2) Taxation**
> The Agency, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of the value of such property, and the tax thereon, shall be determined as of the period for which such tax is imposed.

12 U.S.C. § 4511(j)(4)

By reading the three provisions together, it is reasonable to infer an intention by Congress to shield the Plaintiffs from tax liabilities, while leaving a municipality free to establish and enforce other regulations, such as ordinances safeguarding the health and safety of its residents. *See Gonzales v. Oregon*, 546 U.S. 243, 274, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) ("…the background principles of our federal system also belie the notion that Congress would use such an obscure grant of authority to regulate areas traditionally supervised by the States' police power").

It would, of course, make little sense for HERA to preempt municipal functions related to land use and public safety. The impact of such a preemption would be far-reaching and patently absurd. For example, city laws regulating criminal and dangerous activities on property would be ineffective and unenforceable against property owned by FHFA or Fannie Mae. Similarly, FHFA would be permitted to ignore municipal building, plumbing, electric codes, and fire codes could be placing residents and neighborhoods at risk of fire and other hazards. This illogical result would extend to zoning and business licensing requirements necessary for the welfare of the community: all would be utterly unenforceable and therefore ineffective against the Plaintiffs.

The Plaintiffs interpretation of HERA would effectively render their properties immune and untouchable by any municipal ordinance.

The Plaintiffs cannot point to any language in § 4617(a)(7), or in the rest of HERA, that support such a conclusion. Moreover, the Court should refuse to construe "[l]egislative enactments ... as establishing statutory schemes that are illogical, unjust, or capricious." *Bechtel Constr., Inc. v. United Bhd. of Carpenters*, 812 F.2d 1220, 1225 (9th Cir. 1987).

In their brief, Plaintiffs have cited authority that has held the "Penalty Bar" provision of HERA **impliedly** preempted a local land-use ordinance. *Fed. Hous. Fin. Agency v. City of Chicago*, 962 F.Supp.2d 1044 at 1056-57 (N.D. Ill. 2013) (holding "Congress could not have intended to preclude other federal agencies and states from regulating FHFA's operations, but permit thousands of municipalities all over the country to impose varying ordinances and obligations on FHFA. Such a result would invite chaos, as FHFA would be subject to a variety of potentially conflicting ordinances, raising the expenses of FHFA in not only complying with those ordinances, but in simply monitoring the various requirements.")

However, *City of Chicago's* reasoning is unpersuasive. *See: Jordan v. Nationstar Mortg.*, LLC, 240 F. Supp. 3d 1114, 1119 (E.D. Wash. 2017) (holding that a state statute regulating foreclosure was not expressly or impliedly preempted by HERA).

In disagreeing with the *Fed. Hous. Fin. Agency* decision, the *Jordan* Court held that *City of Chicago* "overlooked that Congress chose to preempt state laws in certain contexts but not others, which cuts against an inference of leaving no room for state laws." *Id.* at 1126. Key to the reasoning of the *Jordan* was HERA's legislative purpose, as articulated by the Court as "to stabilize the national housing market, protect the public against the Enterprises' past irresponsible practices, and help homeowners avoid foreclosure." *Jordan v. Nationstar Mortg.*, LLC, 240 F. Supp. 3d 1114 at 1124-1125.

The *Jordan* Court flatly rejected the reasoning of the *City of Chicago* Court's contention that "absurdity and chaos that would ensue if the FHFA, in operating the Enterprises, must comply with local ordinances and laws." In disputing this line of reasoning, *Jordan* held **"*that is exactly how the Enterprises operate.*"** (Emphasis added). *Jordan v. Nationstar Mortg.*, LLC, 240 F. Supp. 3d 1114 at 1124-1125.

To the contrary, absurdity and chaos will certainly ensue if the Plaintiffs are allowed to evade enforcement of the Defendants' anti-blight regulations, or municipal land use regulations in general. Indeed, the Plaintiffs would not have to answer to any regulating entity whatsoever with respect to maintenance of the subject property, potentially exposing homeowners and residents to health and safety risks, and risking harm to property values in the surrounding neighborhood. It is unreasonable to conclude that this was an express or implied intention of HERA.

Rather, it is more rationale to conclude that HERA leaves room for municipalities to still enforce regulations designed to protect the public welfare, such as the City of Ansonia's anti-blight laws.

### III. THERE IS NO CONFLICT BETWEEN HERA AND ANSONA'S ANTI-BLIGHT ORDINANCE.

[U]nder the Supremacy Clause ... any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. at 108, 112 S.Ct. 2374 (internal quotation marks and citations omitted). Preemption occurs when state law conflicts with federal law, either because "compliance with both federal and state regulations is a physical impossibility" or "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 132 S.Ct. 2492, 2501, 183 L.Ed.2d 351 (2012) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), and *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

Plaintiffs are required to show a conflict between HERA and Ansonia's ordinance "strong enough to overcome the presumption that state and local regulation of [property interest] matters can constitutionally coexist with federal regulation." *See Hillsborough Cty.*, 471 U.S. at 716, 105 S.Ct. 2371.

Here, compliance with HERA and Ansonia's anti-blight law is unquestionably not a "physical impossibility." *See Arizona*, 132 S.Ct. at 2501 (citation omitted).

"Conflict preemption occurs only in those circumstances where 'compliance with both federal and state regulations is a[n] ... impossibility,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Frank

*Bros., Inc. v. Wisconsin Dep't of Transp.*, 409 F.3d 880, 894 (7th Cir. 2005) (quoting *California Fed. Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987)).

In this case, it is clear that HERA's "Penalty Bar" and Lien Bar" can continue to apply to matters of taxation and other areas explicitly preempted by the statute, such as "failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees." 12 U.S.C. § 4511(j)(4), while the Defendants continue to enforce the fee and lien provisions of its anti-blight and land use regulations.

Such an interpretation would allow both federal and municipal laws to coexist while still accomplishing and executing HERA's purpose and objectives. *See Arizona*, 132 S.Ct. at 2501 (citation omitted); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) ("What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.").

"Although Congress conferred expansive powers to the FHFA, it did not give the FHFA the power to repudiate statutory property interest protections, or the ability to circumvent compliance with all state laws. The FHFA cannot expand its powers by arguing that Congress's objectives were broader than the powers conferred by HERA." *Jordan v. Nationstar Mortg.*, LLC, 240 F. Supp. 3d 1114 at 1129.

## CONCLUSION

Based on the above, the Plaintiffs have failed to meet their high burden of establishing that the provisions of HERA preempt the City of Ansonia's anti-blight laws and regulations. The Defendants therefore pray that the Plaintiffs' Motion for Summary Judgment be denied on that basis.

**RESPECTFULLY SUBMITTED.**

**DEFENDANTS,**

**CITY OF ANSONIA**
**RONDA PORRINI**
**DAVID BLACKWELL**
**ARTHUR J. DAVIES**


By: /s/John P. Marini (ct28112)
     Marino, Zabel & Schellenberg, PLLC
     657 Orange Center Road
     Orange, CT  06477
     T:  (203) 864-4511
     F:  (203) 456-8249
     E-mail:  jmarini@mzslaw.com


## **CERTIFICATION**

I hereby certify that on January 15, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                              /s/ John P. Marini
                                John P. Marini