# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, on its own behalf and in its capacity as Conservator for Federal National Mortgage Association; FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>      Plaintiffs,<br><br> v.<br><br>CITY OF ANSONIA; RONDA PORRINI, in her official capacity as City Land Use Administrator; DAVID BLACKWELL, SR., in his official capacity as City Anti-Blight Officer; ARTHUR J. DAVIES, in his official capacity as Connecticut State Marshal,<br><br>      Defendants. | Civil Action No. 3:20-cv-01320-MPS<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

## PRELIMINARY STATEMENT

In HERA, Congress protected FHFA conservatorships from "any" penalties, "including" penalties relating to taxes.  Congress also protected the conservatorships from "any" involuntary liens.  Here, Defendants seek to hold Fannie Mae—an entity in FHFA conservatorship, and to which FHFA is therefore the legal successor—liable for amounts the City's own Code deems penalties, and to attach an involuntary lien to Fannie Mae's property.

Defendants' response memorandum [ECF No. 27] ("Opp."), correctly acknowledges HERA's preemptive effect, but contends that the statute does not cover the penalties or the lien at issue here, because they are "municipal."  In substance, Defendants contend that in HERA, "any" means "only some," and "including" means "but limited to."  That is wrong; this Court must apply the broad and unconditional language Congress enacted at face value.  The Court should hold that HERA's preclusion of liability for "any" penalty prevents the City from imposing liability upon Fannie Mae for the penalties Defendants seek to collect, and that HERA's preclusion of "any" involuntary lien prevents the City from attaching an involuntary lien to the property.  No court could reasonably expect Congress to specifically identify every form of precluded penalty or lien in addition to using the all-encompassing word "any," and this Court should reject Defendants' argument that Congress had to do so here.

This Court should grant Plaintiffs' Motion for Summary Judgment and declare the penalties and fines City purported to impose on Fannie Mae, and the lien the City purported to attach to Fannie Mae's property as an enforcement mechanism, void as a matter of law.

## ARGUMENT

The Constitution makes federal law "the supreme Law of the Land," and mandates that "the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. CONST. art. VI, cl. 2.  Thus, under the Constitution,

federal law preempts any inconsistent state and local law.  Defendants seek to avoid preemption here by arguing that the federal statutes at issue—the Penalty Bar and the Involuntary Lien Bar, which preclude "any" penalties" and the attachment of "any" involuntary liens—should be given a far narrower meaning than the words Congress enacted convey.  *See generally* Opp. at 5–11.

"The key to the preemption inquiry is the intent of Congress."  *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (citation omitted).  Casting the plain meaning of the statutory language aside, as Defendants seek to do, would flout the "cardinal canon" of statutory interpretation—"that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

## I.   HERA'S PENALTY BAR AND INVOLUNTARY LIEN BAR EXPRESSLY PREEMPT THE BLIGHT ORDINANCE HERE

### A.   The Penalty Bar and the Involuntary Lien Bar Apply to "Any" Penalties or Involuntary Liens, Including Those Imposed under Municipal Ordinances

Defendants do not contest that HERA is expressly preemptive.[1]  Instead, they contend that the preemptive effect of the Penalty Bar and the Involuntary Lien Bar extends only to *state* statutes, not municipal code provisions, arguing that Congress did not intend to preempt municipal penalties or municipal liens when it enacted a provision precluding "any" penalties and "any" involuntary liens.  *See, e.g.*, Opp. at 5 (arguing that "HERA . . . was not intended to apply to a municipality or local government's ability to assess blight liens").  That is wrong.

---

[1]   Somewhat curiously, Defendants dub a HERA provision that Plaintiffs did not cite in the opening brief—12 U.S.C. § 4617(a)(7), which provides that FHFA as Conservator "shall not be subject to the direction or supervision of . . . any State"—the "preemption clause."  (*See* Opp. at 3, 5–6, 9.)  That provision supports Plaintiffs—State supervision encompasses municipal supervision because "[m]unicipalities . . . are administrative units of the state," *see Moore v. Ganim*, 233 Conn. 557, 559 n.2, 660 A.2d 742 (1995), and Defendant's imposition of penalties and liens qualifies as "direction or supervision."  Regardless, the Penalty Bar and the Involuntary Lien Bar carry preemptive effect on their own.

Although the Supremacy Clause refers to "Laws of any State," the preemptive effect of federal law applies to municipal law as well.  "Under the doctrine of preemption, . . . any state *or municipal* law that is inconsistent with federal law is without effect."  *Greater New York Food Council, Inc. v. Giuliani*, 195 F.3d 100, 104–05 (2d Cir. 1999) (emphasis added); *see also New York SMSA*, 612 F.3d at 103–04 (similar).

As an initial matter, HERA's uncontested preemption of *state* law would suffice here.  "Municipalities in the state of Connecticut . . . have no independent authority or independent responsibility; they are administrative units of the state and can do only what the state authorizes or delegates them to do."  *Moore*, 233 Conn. at 559 n.2.  It is Connecticut state law that authorized the City of Ansonia (the "City") to enact the Anti-Blight Program and subsequently record real estate liens for "any unpaid penalty imposed by [the] municipality pursuant to the provisions of an ordinance regulating blight."  CONN. GEN. STAT. § 7-148aa.  HERA's preemption of the state authorizing statute (insofar as it purports to authorize municipalities to impose fines on the Enterprises or attach liens to Enterprise property) would render the City's actions here *ultra vires* and thereby negate them.

Regardless, even if the state authorizing statute is ignored, Defendants' "state-law only" argument conflicts with HERA's plain text.  Defendants argue, in substance, that the Penalty Bar's prohibition on "***any*** amounts in the nature of penalties or fines" actually means "***only some, and not the City's,*** amounts in the nature of penalties or fines," and they argue that the Involuntary Lien Bar's prohibition on "***any*** involuntary lien" actually means "***only some, and not the City's,*** involuntary liens."  That is wrong; the word "any" simply does not support Defendants' interpretation.

Indeed, the Second Circuit and this Court have already agreed that the word "any" is

-3-

JAB/F0874/1001/1729624v1
01/29/21-HRT/GCR

unambiguous, requiring no extra language to express the drafter's all-encompassing intent. *United States v. Altese*, 542 F.2d 104, 106 (2d Cir. 1976) ("[The Act] in its entirety says in clear, precise and unambiguous language—the use of the word 'any'—that all enterprises . . . fall within the interdiction of the Act.") (citation omitted); *Allstate Ins. Co. v. Essiam*, No. 3:15-CV-00180 (JCH), 2016 WL 8716202, at *3 (D. Conn. May 27, 2016) ("The word 'any' is not ambiguous. . . . Thus, when the motor vehicle exclusion refers to 'any motor vehicle' it is referring to an indiscriminate motor vehicle of whatever kind.") (citation omitted).

Defendants nevertheless contend that, because a different HERA provision—12 U.S.C. § 4617(j)(2) (the "Taxation Bar")—explicitly mentions "State, county, municipality, or local taxing authority" while the Penalty Bar and the Involuntary Lien Bar do not, Congress must have "intended," by silence, to exclude municipalities from the latter provisions' preemptive scope. Opp. at 8–9.[2] That is not correct. The Taxation Bar includes an express reference to "municipalit[ies]" and and other State and local governmental bodies because it applies only to *non-federal* taxes; Congress chose to enumerate the *other* units of government that were precluded from imposing taxes rather than to use a subtractive term like "governmental unit that is non-federal." The Penalty Bar and the Involuntary Lien Bar are different; they include no carve-out that would allow *any* unit of government—federal, state, municipal, or otherwise—to impose penalties or attach involuntary liens. As a result, there was no need for Congress to list out the levels that were (or were not) subject to the preclusion; the provision covers them all automatically.

As such, Defendants' invented prerequisite, that the text of all-encompassing statutes

---

[2]    In so doing, Defendants cite the wrong code sections; the relevant provisions are all in 12 U.S.C. § 4617(j), not 12 U.S.C. § 4511(j). *See* Opp. at 8.

-4-

does not apply to the City in the absence of an express "mention of municipalities or local government," is unfounded and incorrect; the Court should reject it.

### B. The Penalty Bar and the Involuntary Lien Bar Apply Generally, Not Solely in the Taxation Context

Defendants also suggest that the Involuntary Lien Bar and the Penalty Bar apply only to tax-related penalties, asserting in a single sentence that those provisions "can be read as pertaining solely to" the Taxation Bar. Opp. at 8. Defendants' argument is opaque and undeveloped, and therefore waived, but to the extent they mean to contend that the Penalty Bar's "including" clause—which refers to penalties "arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due," 12 U.S.C. § 4617(j)(3)—restricts the statute's operation to tax-related penalties only, Defendants are similarly mistaken. As the Supreme Court has held, terms within an "including clause" are universally recognized as "illustrative and not limitative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).[3] Indeed, a court evaluating the identical "including" clause in the FDIC Penalty Bar context held that "the referenced taxes and fees present a *nonexhaustive list of examples* of the types of penalties or fines for which FDIC–Receiver shall not be liable." *Alexander v. Wash. Mut., Inc.*, No 07-cv-4426, 2011 WL 2559641, at *2 (E.D. Pa. June 28, 2011) (emphasis added). Thus, that the Penalty Bar's "including" clause refers to tax-related penalties is in no way "limitative" of the broad, all-encompassing meaning of the

---

[3] *See also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2170 (2012) (The choice of the word "including" "is significant because it makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive."); *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."); *Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs*, 726 F.3d 387, 393 (3d Cir. 2013) (similar); *Reich v. Cambridgeport Air Sys., Inc.*, 26 F.3d 1187, 1191 (1st Cir. 1994) (similar).

statutory term "any … penalt[y]."

Defendants acknowledge authority holding that the Penalty Bar preempts city land-use ordinances. Opp. at 9 (discussing *FHFA v. City of Chicago*, 962 F. Supp. 2d 1044, 1064 (N.D. Ill. 2013)). Rather than distinguish, or even engage substantively with, *City of Chicago* or any other case Plaintiffs cite for the proposition, Defendants note that an isolated and off-point out-of-circuit decision once "disagee[d]" with *City of Chicago*. Opp. at 10 (citing *Jordan v. Nationstar Mortg. Co.*, 240 F. Supp. 3d 1114, 1118–19 (E.D. Wash. 2017)).

Defendants' reliance on *Jordan* is misplaced. *Jordan* does not address the preemptive effect of the Penalty Bar or the Involuntary Lien Bar; instead, it analyzes whether a *different* HERA provision—12 U.S.C. § 4617(a)(7), which Plaintiffs did not invoke in the opening brief—preempted a *different* state law, one that would prevent a servicer "taking possession of homes in default by entering and changing locks prior to foreclosure." *Jordan*, 240 F. Supp. 3d at 1117. *Jordan*'s only reference to the Penalty Bar or the Involuntary Lien Bar was to concede that the Involuntary Lien Bar may only "permit[] levy, attachment, garnishment, foreclosure, or sale *with the FHFA's consent*," which is notably absent here. *Jordan*, 240 F. Supp. 3d at 1126 (emphasis added). The *Jordan* decision is therefore irrelevant here, as Defendants' brief confirms. Defendants quote *Jordan*'s acknowledgment "that Congress chose to preempt state laws in certain contexts," 240 F. Supp. 3d at 1126, but ignore the fact that Congress "chose to preempt state laws" in the context *this* case addresses, both by drafting the Penalty Bar's prohibition on "*any* amounts in the nature of penalties or fines," and by drafting the Involuntary Lien Bar's prohibition on "*any* involuntary lien attach[ing] to the property of the Agency."

Defendants' predictions of "absurdity and chaos" also lack merit. Opp. at 10. As explained in the opening brief, Plaintiffs have prevailed in many similar cases across the United

-6-

States, to no known chaotic effect.[4]  Plaintiffs appreciate the City's concern regarding vacant and blighted properties; proper maintenance of all Fannie Mae property is important to FHFA's exercise of its power to preserve and conserve conservatorship assets.  *See* 12 U.S.C. § 4617(b)(2)(B)(iv).  Defendants' contention that applying HERA according to its terms here would "effectively render [Fannie Mae's] properties immune and untouchable by any municipal ordinance," Opp. at 9, fares no better.  The Penalty Bar has no effect on the City's ability to recover any actual remediation expenses, as the Penalty Bar does not apply to compensatory awards.  Plaintiffs stand ready to work with Defendants to ameliorate any blight or property-condition concerns the City may have in relation to Fannie Mae-owned property.  However, Plaintiffs cannot allow the City to disregard HERA in pursuit of its anti-blight goals, however well-intentioned they may be.

### II. ANALOGOUS FDIC STATUTES CONFIRM THE PREEMPTIVE EFFECT OF THE PENALTY BAR AND THE INVOLUNTARY LIEN BAR OVER MUNICIPAL LAW

Plaintiffs' preemption arguments are further confirmed by numerous decisions applying analogous statutes governing the Federal Deposit Insurance Corporation ("FDIC") receiverships, 12 U.S.C. § 1825(b)(2)–(3).  Defendants have offered neither law nor argument in rebuttal.

The Second Circuit, the Ninth Circuit, and District Courts within the Second Circuit have all held that the FDIC provision paralleling HERA's Penalty Bar supersedes otherwise applicable state and local law.  *See, e.g.*, *Nat'l Loan Inv'rs L.P. v. Town of Orange*, 204 F.3d 407, 410 (2d

---

[4] Dozens of cases have applied section 4617(j)(3)'s "Foreclosure Bar" in Nevada, without any absurdity or chaos emerging.  *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. Donel*, No. 2:16-CV-176 JCM (PAL), 2017 WL 2692403, at *3 (D. Nev. June 21, 2017); *G & P Inv. Enters., LLC v. Wells Fargo Bank, N.A.*, 199 F. Supp. 3d 1266, 1269 (D. Nev. 2016); *Elmer v. Freddie Mac*, No. 14-01999, 2015 WL 4393051, at *3 (D. Nev. July 13, 2015); *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1159 (D. Nev. 2015), *appeal dismissed* (Feb. 2, 2016).

Cir. 2000) (recognizing, in the context of town sewer assessment, that 12 U.S.C. § 1825(b)(3) protects FDIC receivers from liability for penalties or fines); *In re Cty. of Orange*, 262 F.3d 1014, 1022 (9th Cir. 2001) (similar); *S/N1 Reo Ltd. Liability Co. v. City of New London ex rel. Ballestrini*, 127 F. Supp. 2d 287, 292 (D. Conn. 2000) (similar); *Cassese v. Washington Mut., Inc.*, 711 F. Supp. 2d 261, 273 (E.D.N.Y. 2010) (similar). This FDIC provision, materially identical to the Penalty Bar, broadly shields the federal agency from liability for penalties or fines "without qualification." *Nat'l Loan Inv'rs L.P.*, 204 F.3d at 410.

Similarly, the Tenth Circuit, the Fifth Circuit, and District Courts within the Second Circuit have all held that the FDIC provision paralleling HERA's Involuntary Lien Bar supersedes otherwise applicable state and local law. *See, e.g.*, *F.D.I.C. v. Lowery*, 12 F.3d 995, 995, 997 (10th Cir. 1993) (affirming decision that under 12 U.S.C. § 1825(b), "local authorities could not invoke state enforcement mechanisms to collect taxes from the FDIC without its consent," and adding that "Section 1825(b)(2) explicitly states no involuntary lien may attach to the property of the FDIC."); *Irving Indep. School Dist. v. Packard*, 970 F.2d 58, 61 (5th Cir. 1992) (similar); *Beal Bank, SSB v. Nassau Cty.*, 973 F. Supp. 130, 133 (E.D.N.Y. 1997) (similar). This FDIC provision, materially identical to the Involuntary Lien Bar, "denies authorities" like Defendants "the ability to lien a [conservatorship] property as a vehicle for collection" of a debt. *Lowery*, 12 F.3d at 997.

### III.  CONFLICT PREEMPTION ALSO APPLIES

Defendants contend that conflict preemption does not apply because no real conflict exists between (1) the City's imposition of a penalty and attachment of an involuntary lien, and (2) a federal statute that precludes exactly those things. Opp. at 11–12. That is wrong.

Defendant cannot persuasively explain how "there is no conflict" between (1) a federal statutory scheme that precludes attachment of involuntary liens to the Property and protects

Plaintiffs from liability for fines or penalties, and (2) a city law that would attach an involuntary lien to the Property to secure enforcement of a blight fine or penalty.  *See id*.  Although Defendants argue that simultaneous compliance with HERA and the Blight Ordinance is "unquestionably not a 'physical impossibility,'" in support, they propose a framework in which the federal Penalty Bar and Involuntary Lien Bar actually yields to thelocal Blight Ordinance— the exact opposite of what the Supremacy Clause requires.  *See id.*  Defendants' proposed solution demonstrates how it is impossible to enforce the Blight Ordinance without plainly conflicting with federal laws that preempt it.  Moreover, "even if it is possible to comply with both state and federal law, state law is conflict-preempted whenever it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (citing *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012)).

Regarding penalties or fines, under the Blight Ordinance, non-compliance by an "owner of real property" constitutes a violation "punishable by a fine of one hundred dollars ($100.00) for each day a violation exists," and increasing to $250 per day if the real property is not brought into compliance within 30 days.  Ansonia Code § 13-50(a)–(b).  But where an Enterprise under FHFA's conservatorship owns real property, federal law prevents FHFA as Conservator—and therefore the entities operating under its conservatorship—against being "liable for any amounts in the nature of penalties or fines."  *See* 12 U.S.C. § 4617(j)(4).

Regarding involuntary liens, under the Blight Ordinance, a failure "to pay any fee or fine" related to a Blight Ordinance violation "*shall constitute a lien* upon the real estate against which the fee was imposed" and "[e]ach such lien may be continued [and] recorded."  Ansonia Code § 13-50(f) (emphasis added).  But where an Enterprise under FHFA's conservatorship

JAB/F0874/1001/1729624v1
01/29/21-HRT/GCR

owns real property, federal law prevents "any involuntary lien" such as the Blight Lien—which, as an archetypal involuntary lien, purports to arise by automatic operation of statute—from "attach[ing] to the property of the Agency." *See* 12 U.S.C. § 4617(j)(3).

As a result, it is impossible for Defendants to enforce the Blight Ordinance—by imposing per diem blight fines or by attaching blight liens to the Property after Fannie Mae took title—and simultaneously comply with federal law, which shields Plaintiffs from liability as to penalties or fees, and which prevents Defendants from recording this type of involuntary lien on conservatorship property. Thus, there is actual conflict between the federal and local laws. Indeed, the Ninth Circuit recently rejected substantially the same argument, holding that FHFA's option to consent to the state law's operation did not eliminate the inherent conflict or neutralize HERA's preemptive effect. *See Berezovsky v. Moniz*, 869 F.3d 923, 930–31 (9th Cir. 2017).

## CONCLUSION

This Court should award summary judgment to FHFA and Fannie Mae, and declare the lien, as well as any penalties and fines assessed against Fannie Mae, void as a matter of law.

**RESPECTFULLY SUBMITTED,**

**PLAINTIFFS,**

**FEDERAL HOUSING FINANCE AGENCY, on its own behalf and in its capacity as Conservator for Federal National Mortgage Association**

By: */s/ James A. Budinetz*
James A. Budinetz (ct16068)
McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
One State Street, 14th Floor
Hartford, CT 06103-3102
T: (860) 522-5175
F: (860) 522-2796
Email: jbudinetz@mdmc-law.com

-10-

and

Asim Varma, Esq. (*pro hac vice* admission to be sought)
Michael A.F. Johnson, Esq. (*pro hac vice* admission to be sought)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue
Washington, D.C. 20001
T: (202) 942-5000
F: (202) 942-5999
Email: asim.varma@arnoldporter.com
michael.johnson@arnoldporter.com

**and**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**

By: */s/ Andrew L. Baldwin*
Andrew L. Baldwin (ct29171)
GOLDBERG SEGALLA, LLP
100 Pearl Street, Suite 1100
Hartford, CT 06103-4506
T: (860) 760-3328
F: (860) 760-3313
Email: abaldwin@goldbergsegalla.com