UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, on its own behalf and in its capacity as Conservator for Federal National Mortgage Association; FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br> *Plaintiffs*,<br><br> v.<br><br>CITY OF ANSONIA; RONDA PORRINI, in her official capacity as City Land Use Administrator; DAVID BLACKWELL, SR., in his official capacity as City Anti-Blight Officer; ARTHUR J. DAVIES, in his official capacity as Connecticut State Marshal,<br><br> *Defendants*. | No. 3:20-cv-01320 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Federal Housing Finance Agency ("FHFA"), on its own behalf and as Conservator for the Federal National Mortgage Association ("Fannie Mae"), and Fannie Mae bring this action for declaratory judgment, to quiet title, and for corresponding injunctive relief against the City of Ansonia, Connecticut (the "City"); Ronda Porrini, in her official capacity as City Land Use Administrator; David Blackwell, Sr., in his official capacity as City Anti-Blight Officer; and Arthur J. Davies, in his official capacity as Connecticut State Marshal. ECF No. 1. The plaintiffs have filed a motion for summary judgment. ECF No. 18. For the reasons set forth below, I GRANT that motion.

I. **BACKGROUND**

The following facts are taken from the plaintiffs' Local Rule 56(a) Statement or are subject to judicial notice.[1] The parties agree that this case presents a purely legal issue and neither party disputes any material fact in this case.

On September 6, 2008, FHFA placed Fannie Mae into a conservatorship and appointed itself as conservator. The purpose of the conservatorship is "reorganizing, rehabilitating or winding up [Fannie Mae's] affairs." 12 U.S.C. § 4617(a)(2). Fannie Mae remains in such conservatorship today. ECF No. 18-2 ¶ 1.

On April 27, 2007, Kevin D. Parham recorded a Warranty Deed in the public records of Ansonia, Connecticut, which transferred title in real property located at 66 Benz Street, Ansonia, Connecticut 06401 ("Property") to Mr. Parham. ECF No. 18-2 ¶ 2. An open-ended mortgage deed listing Kevin D. Parham as the borrower ("Borrower"), American Brokers Conduit as the lender ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), as beneficiary solely as nominee for Lender and Lender's successors and assigns, was executed on April 25, 2007, and recorded on April 27, 2007 ("Deed of Trust"). The Deed of Trust granted Lender a security interest in the Property to secure the repayment of a loan in the original amount of $208,000 to the Borrower. *Id.* ¶ 3. On October 17, 2011, MERS recorded an assignment of the Deed of Trust to Wells Fargo Bank, N.A. ("Wells Fargo"). *Id.* ¶ 4. On June 3, 2019, Wells Fargo recorded a Certificate of Foreclosure stating that on May 7, 2019, "title to [the Property] became absolute in" Wells Fargo. *Id.* ¶ 5. Following Fannie Mae's purchase of the Property at a foreclosure sale, on May 31, 2019, Wells Fargo executed a Quit-Claim Deed that transferred title

---

[1] The defendants did not file a Local Rule 56(a)2 statement. As a result, the facts set forth in the plaintiffs' Local Rule 56(a)1 statement are deemed admitted, D. Conn. L. Civ. R. 56(a)1, and form the basis for this section.

in the Property to Fannie Mae. *Id.* ¶ 6. On June 10, 2019, a Fannie Mae authorized agent recorded the Quit Claim Deed in the public records of the City of Ansonia. *Id.* ¶ 9.

On June 5, 2019, the City of Ansonia, acting through its Blight Enforcement Officer, David Blackwell, Sr., executed a "Blight Lien and Certification of Continuing Lien" ("Blight Lien") against the Property, which the City of Ansonia recorded on June 6, 2019 in its public records. *Id.* ¶ 7. The Blight Lien provides for a $100 per day charge for the first thirty days and a $250 per day charge thereafter as of May 8, 2019 and until the blighted condition of the Property is abated. *Id.* ¶ 8. On July 3, 2020, Connecticut State Marshal Arthur J. Davies sent an Alias Warrant to Fannie Mae, through its authorized agent, seeking to collect an anti-blight fine in the amount of $81,600, which reflects the total amount of the daily fees under the Blight Lien. Including a 15% Marshal Fee, the total fine amounted to $93,840. *Id.* ¶ 10. The Alias Warrant provides the following accounting for the anti-blight fine under the Blight Lien for a total fine of $81,600: [2]

- 05/08/2019 to 05/31/2019: $2,400
- 06/07/2019 to 06/30/2019: $6,000
- 07/01/2019 to 12/31/2019: $46,000
- 01/01/2020 to 04/13/2020: $26,000

*Id.* ¶ 11. The Alias Warrant states that the City of Ansonia had spent "$ 000" on "Remediation" of the Property. *Id.* ¶ 12.

---

[2] The itemized dollar figures add up to $80,400—not $81,600—indicating that the Alias Warrant incorporates a computational error or some other omission. This discrepancy is not material to the issue presented by the summary judgment motion.

## II. LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 657-58 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). As noted above, neither side here contends that there is a genuine dispute of material fact.

## III. DISCUSSION

The only issue presented by this summary judgment motion is whether the Federal Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4511 et seq., preempts the City of Ansonia's anti-blight penalties and liens, which are authorized by Connecticut statutes.[3]

---

[3] This Court has subject matter jurisdiction over this action because "the Supreme Court has consistently recognized federal jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal orders alleged to violate federal law." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 144 (2d Cir. 2016).

*See* Conn. Gen. Stat. § 7-148(c)(7)(H)(xv) (authorizing municipalities to "[m]ake and enforce regulations for the prevention and remediation of housing blight . . ."); *id.* § 7-148aa (authorizing municipalities to record a lien on real estate for "any unpaid penalty imposed by a municipality pursuant to the provisions of an ordinance regulating blight."); Ansonia Code art. III, §§ 13-46 to 13-53.1 ("Anti-Blight Program"); *id.* § 13-50(a)-(b), (f) (authorizing specific penalties and liens for violations of the Anti-Blight Program).

The plaintiffs have moved for summary judgment, arguing that the Connecticut laws under which the defendants imposed monetary penalties on the plaintiffs and attached a lien on the Property to secure payment conflict with, and thus are preempted by, the provisions of HERA that protect FHFA from liens and penalties. ECF No. 18. The defendants respond by arguing that (1) HERA does not expressly or impliedly preempt the City of Ansonia's ability to impose and enforce blight fees and blight liens; and (2) the federal pre-emption of local land-use laws sought by the plaintiffs is contrary to congressional intent, public policy, and a plain reading of HERA. ECF No. 26. For the reasons set forth below, I agree with the plaintiffs and grant the motion for summary judgment.

### A. Federal Preemption.

"The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." *Gonzales v. Raich*, 545 U.S. 1, 29 (2005). This is so even if the federal statutory language does not explicitly manifest Congress's preemptive intent. *See Altria Grp., Inc. v. Good*, 555 U.S. 70, 76-77 (2008). "[C]onflict pre-emption exists where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

5

Congress." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (internal quotation marks omitted).

In deference to the police powers of the states, courts often apply a presumption against federal preemption. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) ("Consideration of issues arising under the Supremacy Clause start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act *unless that [is] the clear and manifest purpose of Congress.*") (emphasis added; internal citation and quotation marks omitted; alterations in original); *see also California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989) ("[A]ppellees must overcome the presumption against finding pre-emption of state law in areas traditionally regulated by the States."). The presumption is "particularly strong where . . . a state or locality seeks to exercise its police powers to protect the health and safety of its citizens." *U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*, 708 F.3d 428, 432 (2d Cir. 2013). In this case, for the reasons discussed below, I find that HERA demonstrates a clear and manifest intent to preempt the anti-blight penalties and blight lien at issue. As a result, I need not decide whether the presumption against preemption applies to state or municipal anti-blight programs.

**B.     HERA's Plain Language Preempts Ansonia's Anti-Blight Penalties and Lien.**

Two provisions of HERA make clear that Ansonia's anti-blight laws are preempted to the extent those laws purport to impose penalties on the plaintiffs and involuntary liens on the Property. Under a subsection titled "Other Agency Exemptions", which applies to FHFA where, as here, FHFA "is acting as a conservator . . .", 12 U.S.C. § 4617(j)(1), HERA provides as follows:

> (3) Property protection
> No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall *any involuntary lien* attach to the property of the Agency.

6

> (4) Penalties and fines
> The Agency shall not be liable for *any amounts in the nature of penalties or fines*, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

*Id.* §§ 4617(j)(3), (4) (emphasis added) (hereinafter "Involuntary Lien Bar" and "Penalty Bar").

To be sure, neither provision expressly preempts state law. *See Berezovsky v. Moniz*, 869 F.3d 923, 930 (9th Cir. 2017) ("Congress did not use sufficiently definite language to brand § 4617(j)(3) as expressly preemptive, although it unquestionably knows how to do so."). But both provisions "unequivocally express[] Congress's 'clear and manifest' intent to supersede *any* contrary law . . .", *id.* (emphasis added), including any state or municipal law, that purports to attach an involuntary lien or impose penalties or fines on FHFA with respect to a property protected by subsection 4617(j). *See id.* at 930-31 (finding that subsection 4617(j)(3) directly conflicts with, and therefore preempts, Nevada's superpriority lien law to the extent the lien law "allows homeowners association foreclosures . . . to automatically extinguish the [FHFA's] property interest without the [FHFA's] consent."). That is so because—even assuming it is not physically impossible to comply with Ansonia's anti-blight program and 12 U.S.C. § 4617(j)—Ansonia's anti-blight penalties and liens stand as obstacles to "Congress's clear and manifest goal of protecting the [FHFA's] assets in the face of multiple potential threats, . . .", *Berezovsky*, 869 F.3d at 931, including threats arising from state or municipal anti-blight programs. *See Oneok, Inc.*, 575 U.S. at 377; *Berezovsky*, 869 F.3d at 930-31; *see also In re Cty. of Orange*, 262 F.3d 1014, 1022 (9th Cir. 2001) (holding that, as to an analogous penalty bar in the FDIC's authorizing statute, "[t]here is no question that [12 U.S.C. § 1825(b)(3)] exempts the FDIC from penalties assessed after it becomes the receiver."); *id.* at 1019-20 (noting that, as to an analogous involuntary lien bar in the FDIC's authorizing statute, "[12 U.S.C. § 1825(b)(2)'s] . . . plain

7

meaning is that once the property belongs to the FDIC, that is, when the FDIC acts as receiver, no liens shall attach.").[4] As a result, HERA's Involuntary Lien and Penalty Bars preempt Ansonia's anti-blight laws to the extent those laws purport to impose any involuntary lien or penalty on a property protected by subsection 4617(j).

None of the defendants' counterarguments compel a different conclusion. First, the defendants point to a separate subsection of HERA, subsection 4617(a)(7), which provides that "[w]hen acting as conservator or receiver, the Agency shall not be subject to the direction or supervision of any other agency of the United States or any State in the exercise of the rights, powers, and privileges of the Agency." The defendants argue that because this subsection refers only to states, not municipalities, HERA does not preempt the provisions of Ansonia's anti-blight program at issue in his case. ECF No. 27 at 5-6. But this argument is flawed for two reasons: (1) the preemptive subsections of HERA relied on by Plaintiffs, 12 U.S.C. §§ 4617(j)(3)-(4), are more specific than, and provide preemptive authority that is separate and independent of, subsection 4617(a)(7), *see Jordan v. Nationstar Mortg., LLC*, 240 F. Supp. 3d 1114, 1121-22 (E.D. Wash. 2017) (observing that—in the context of evaluating the preemptive

---

[4] Under a section titled "Other Exemptions", the provisions of 12 U.S.C. § 1825 (applicable to the Federal Deposit Insurance Corporation ("FDIC" or the "Corporation")) that are analogous to those exemptions in HERA provide as follows: "When acting as a receiver, the following provisions shall apply with respect to the Corporation:

(1) The Corporation including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.

(2) No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, *nor shall any involuntary lien attach to the property of the Corporation.*

(3) The Corporation shall not be liable for *any amounts in the nature of penalties or fines*, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." (emphasis added).

8

effect of 12 U.S.C. § 4617(a)(7)—other courts have recognized that specific subsections of HERA, including 12 U.S.C. § 4617(j)(3), do preempt certain state laws), and so the scope of preemption under subsection 4617(a)(7) does not affect the preemption analysis under subsection 4617(j); and (2) as the plaintiffs point out and as discussed above, Ansonia's authority for its anti-blight program rests entirely on a *state* statute. Thus, HERA's preemptive effect on the underlying state statute—a point conceded by the defendants—is sufficient to grant judgment in favor of the plaintiffs in this case.

The defendants also argue that HERA does not preempt municipal laws because subsections 4617(j)(3) and (4) do not specifically mention municipalities. This argument, too, is flawed. Both subsections 4617(j)(3) and (4) apply to "*any*" penalty and "*any*" involuntary lien, regardless of its source. Courts have consistently construed that type of unambiguous language to be as broad in meaning as its dictionary definition, that is, "any" applies without exception. *United States v. Altese*, 542 F.2d 104, 106 (2d Cir. 1976) ("[The Act] in its entirety says in clear, precise and unambiguous language—the use of the word 'any' that all enterprises . . . fall within the interdiction of the Act.") (footnote omitted); *Allstate Ins. Co. v. Essiam*, No. 3:15-CV-00180 (JCH), 2016 WL 8716202, at *3 (D. Conn. May 27, 2016) ("The word 'any' is not ambiguous. According to Merriam-Webster, 'any' is defined as: 'one or some indiscriminately of whatever kind.'"). Furthermore, to the extent the defendants argue that the preemptive effect of HERA's Involuntary Lien and Penalty Bars deprives the municipality of its ability to protect the health and safety of its citizens, and therefore cannot be enforced based on broader public policy considerations, the plaintiffs point out that Ansonia has other tools that would allow it to achieve those goals without violating HERA. *See* ECF No. 28 ("The Penalty Bar has no effect on the City's ability to recover any actual remediation expenses, as the Penalty Bar does not apply to

9

compensatory awards."). Thus, while HERA's preemption of certain of the City's punitive enforcement provisions may deprive the City of some anti-blight tools as to properties held under FHFA's conservatorship, the City retains meaningful methods for protecting the health and safety of its citizens, as well as the values of their homes, from the adverse effects of housing blight.

IV. **CONCLUSION**

For the reasons set forth above, I hereby GRANT the plaintiffs' motion for summary judgment (ECF No. 18) and enter the following orders:

1. 12 U.S.C. § 4617(j)(4) preempts Ansonia Code §§ 13-46 to 13-53.1 to the extent that the municipal ordinance permits the assessment and collection of penalties and fines on the plaintiffs;

2. All penalties and fines assessed against Fannie Mae in connection with the Property at any time from May 31, 2019[5] to today, including all such amounts enumerated in the Alias Warrant, regardless of whether tallied correctly in that document, are void;

3. 12 U.S.C. § 4617(j)(3) preempts Ansonia Code §§ 13-46 to 13-53.1 to the extent that municipal ordinance permits the attachment of an involuntary lien on the Property;[6]

4. The Blight Lien recorded against the Property is void; and

---

[5] Plaintiffs do not challenge in this lawsuit the validity of the $2,400 in penalties that accrued against the Property prior to May 31, 2019. As a result, this order does not, and should not be construed to, express any opinion as to the penalties imposed as to the Property from May 8 to May 31, 2019.
[6] This order does not, and should not be construed to, express any opinion as to the enforceability of any lien that attaches to a property *before* an entity operating under the conservatorship of FHFA takes title to such property. Finally, Defendants have failed to raise any argument concerning the fact that the conveyance to Plaintiffs was not recorded in the land records until after the lien was recorded in those records.

5. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
July 14, 2021